IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| ERIC BERNARD MCGOWEN | § | |
| VS. | § | CIVIL ACTION NO. 1:21-cv-14 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner Eric Bernard McGowen, an inmate confined at the Telford Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Background and Prior Proceedings

On September 13, 2012, following a trial by jury in the 75th District Court of Liberty County, Texas, Petitioner was convicted of Aggravated Sexual Assault of a Child, Cause No. CR28585. Petitioner was sentenced to a term of ninety-nine years' imprisonment.

Petitioner appealed his conviction to the Ninth Court of Appeals in Beaumont, Texas. On December 18, 2013, the intermediate appellate court affirmed the trial court's judgment. *See McGowen v. State*, No. 09-12-00459, 2013 WL 6705800 (Tex. App. - Beaumont Dec. 18, 2013, pet. ref'd). Petitioner's Petition for Discretionary Review was refused by the Texas Court of Criminal Appeals on May 14, 2014. *Id.*

On March 9, 2015, Petitioner filed a state Application for Writ of Habeas Corpus. He filed an additional state Application on July 15, 2015. On September 16, 2020, the Texas Court of Criminal Appeals denied both Applications without written order. (Doc. 14-35 at *1.) Petitioner filed this Petition on January 11, 2021.

The Petition

Petitioner filed this Petition for Writ of Habeas Corpus asserting the following grounds for review: (1) the trial court erred by denying him alternate counsel; and (2) counsel provided ineffective assistance of counsel by failing to: (a) request an accomplice-witness instruction; (b) challenge three fundamentally defective and deficient counts of the Indictment; (c) object to numerous errors within the trial court's charge to the jury during the guilt/innocence phase; and (d) defend against the charges such that the trial was the functional equivalent of a guilty plea.

The Response

The Respondent was ordered to show cause why relief should not be granted. In response, the Respondent asserts a general denial, denying all of Petitioner's assertions of fact, except those supported by the record or specifically admitted in the response. The Respondent contends that claims 1 and 2(a) are without merit. The Respondent also contends that claims 2(b), 2(c), and 2(d) were not properly exhausted and are now procedurally barred. Finally, the Respondent asserts that the petition should be dismissed because Petitioner has failed to show the state court resolution of his claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Factual Background

The factual background and evidence presented at trial was summarized by the Ninth Court of Appeals on direct appeal as follows:

> R.S., an eleven-year-old girl, was sexually assaulted by a group of males over a two month period at different locations. On one of the occasions, R.S. was taken to the "baby room" in the "blue house" where she was sexually assaulted by several males, and then later that day was again sexually assaulted by various males in a brown trailer. R.S. testified there were probably more than twenty males that assaulted her that day, and the record reveals she was at the blue house and the trailer for several hours. Brad Lewis, Isaiah Ross, Marcus Porchia, and appellant, Eric McGowen, were among those indicted for the aggravated sexual assault of R.S.

*McGowen*, 2013 WL 6705800 at *2.

<u>Standard of Review</u>

Title 28 U.S.C. § 2254(a) allows a district court to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254 generally prohibits a petitioner from relitigating issues that were adjudicated on the merits in state court proceedings, with two exceptions. *See* 28 U.S.C. § 2254(d). The first exception allows a petitioner to raise issues previously litigated in the state court in federal habeas proceedings if the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The second exception permits relitigation if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Federal habeas relief from a state court's determination is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Federal habeas courts are not an alternative forum for trying facts and issues which were insufficiently developed in state proceedings. *Williams v. Taylor*, 529 U.S. 420, 437 (2000). Further, following the Supreme Court's decision in *Cullen v. Pinholster*, federal habeas review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A decision is contrary to clearly established federal law if the state reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts. *Id.*

3

This court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *See Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941, 948 n. 11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez,* 274 F.3d at 951 (holding that a full and fair hearing is not a precondition according to § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review).

## Analysis

I.    *Exhaustion and Procedural Default*

The Respondent contends several of Petitioner's claims are unexhausted and procedurally barred. Specifically, the Respondent cites Petitioner's claims that trial counsel provided ineffective assistance by failing to: 2(b) challenge three fundamentally defective and deficient counts of the Indictment; 2(c) object to numerous errors within the trial court's charge to the jury during the guilt/innocence phase; and 2(d) defend against the charges such that the trial was the functional equivalent of a guilty plea.

A person in custody pursuant to the judgment of a state court generally must exhaust available state habeas remedies prior to filing an application in Federal court. Title 28 U.S.C. § 2254 provides in pertinent part the following:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
>  (A)  the applicant has exhausted the remedies available in the courts of the State; or
>
>  (B)(i)  there is an absence of available State corrective process; or
>
>   (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

The exhaustion requirement is satisfied when the substance of the federal habeas claim has been "fairly presented" to the highest state court in a procedurally proper manner according to the rules of the state courts. *Baldwin v. Reese*, 541 U.S. 27, 29-33 (2004) (holding a petitioner failed to "fairly present" a claim of ineffective assistance by his state appellate counsel merely by labeling the performance of said counsel "ineffective," without accompanying that label with either a reference to federal law or a citation to an opinion applying federal law to such a claim). The exhaustion requirement is not met if the petitioner presents new legal theories or factual claims in his federal habeas petition. *Anderson v. Harless*, 459 U.S. 4, 6-7 (1982); *Riley v. Cockrell*, 339 F.3d 308, 318 (5th Cir. 2003) ("It is not enough that the facts applicable to the federal claims were all before the State court, or that the Petitioner made a similar state-law based claim. The federal claim must be the 'substantial equivalent' of the claim brought before the State court."), *cert. denied*, 543 U.S. 1056 (2005); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) ("where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement").

In order to have "fairly presented" his federal claim, the Petitioner must have reasonably alerted the state courts to the federal nature of his complaint. *Baldwin*, 541 U.S. at 29-33. "A fleeting reference to the federal constitution, tacked onto the end of a lengthy, purely state-law evidentiary argument, does not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights." *Wilder*, 274 F.3d at 260. Moreover, the court explained that "to hold that vague references to such expansive concepts as due process and fair trial fairly present, and therefore exhaust, federal claims is to eviscerate the exhaustion requirement." *Id*.

If a petitioner has failed to exhaust state court remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the claims are procedurally defaulted for purposes of federal habeas review, irrespective of whether the last state court to which the petitioner actually presented his claims rested its decision upon an independent and adequate state ground. *Coleman v. Thompson*, 501 U.S.

722, 735 n. 1 (1991). The Texas abuse-of-the-writ doctrine is an "independent and adequate" state procedural rule. *See Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (holding that the Texas Court of Criminal Appeals has strictly and regularly denied state habeas applications for abuse of the writ since 1994). "Texas' abuse of the writ doctrine is a valid state procedural bar foreclosing federal habeas review." *Coleman v. Quaterman*, 456 F.3d 537, 542 (5th Cir. 2006), *cert. denied*, 549 U.S. 1343 (2007); *Moore v. Quarterman*, 534 F.3d 454, 463 (5th Cir. 2008).

A.  Application

A review of Petitioner's state proceedings reveals that the Respondent is correct in his assertion that Petitioner did not fairly and properly present all of his claims to the highest state court in a procedurally correct manner. Petitioner failed to raise claims 2(b), 2(c), and 2(d) either on direct appeal or in his state habeas application, raising the claims for the first time in this Petition. Therefore, the Texas Court of Criminal Appeals has not had an opportunity to review Petitioner's claims. Accordingly, Petitioner's claims 2(b), 2(c), and 2(d) are unexhausted. Since Petitioner did not properly raise these claims before the Texas Court of Criminal Appeals, these claims are now procedurally barred.

A habeas petitioner can overcome a procedural default by showing cause and actual prejudice or a miscarriage of justice. *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). However, Petitioner has failed to demonstrate either cause, prejudice or a miscarriage of justice.

In this scenario, the Supreme Court's holding in *Martinez v. Ryan*, 566 U.S. 1 (2012), furnishes a very narrow avenue for circumventing the procedural default of a claim in some cases. "[A] procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id*. at 17. However, it requires a federal habeas petitioner to show that the performance of his state habeas counsel was so deficient as to preclude a state court merits review of a meritorious claim of ineffective assistance by trial counsel, thus

permitting a federal habeas court to undertake a merits review of the otherwise procedurally defaulted complaint of ineffective assistance by state trial counsel. *See In re Edwards*, 865 F.3d 197, 207-08 (5th Cir.), *cert. denied*, 580 U.S. 1107 (2017) (In order to show cause for procedural default under *Martinez* and *Trevino v. Thaler*, 569 U.S. 413 (2013), "the petitioner must show (1) that his claim of ineffective assistance of counsel at trial is 'substantial' (i.e., 'has some merit'); and (2) that his habeas counsel was ineffective for failing to present those claims in his first state habeas application.") (quoting *Beatty v. Stephens*, 759 F.3d 455, 465-66 (5th Cir. 2014)); *Prystash v. Davis*, 854 F.3d 830, 836 (5th Cir. 2017), *cert. denied*, 583 U.S. 1062 (2018) (holding the Supreme Court's rulings in *Martinez* and *Trevino* created a narrow exception to the general rules of procedural default that applies only to a claim of ineffective assistance by state trial counsel). As explained below, Petitioner has failed to satisfy his burden in this regard.

  1. <u>Indictment</u>

In claim 2(b), Petitioner asserts that trial counsel provided ineffective assistance when he failed to challenge defective and deficient counts of the Indictment because they did not allege all of the elements of an offense. Petitioner, however, is mistaken.

The Indictment in this case charged Petitioner with Aggravated Sexual Assault of a Child under TEX. PENAL CODE Ann. §22.021 (Vernon's Supp. 2010). Section 22.021(a)(1)(B) sets forth alternative, statutorily-defined manners of committing Aggravated Sexual Assault of a Child. *Id.* In the separate paragraphs, Petitioner was charged with four alternatives in this case. (Doc. 14-28 at 5-6). In the first two paragraphs, Petitioner was charged with penetration of the victim's sexual organ by his sexual organ and by the sexual organ of another. In the remaining paragraphs, Petitioner was charged with penetration of the victims' mouth by his sexual organ and the sexual organ of others. Likewise the jury instructions charged alternative manners. (Doc. 14-28 at *132-33.)

Under Texas law, "the State may, in one indictment, allege alternative legal theories for one offense . . . . If this is done, [however,] the State may obtain only one conviction based on that indictment." *Vick v. State*, 991 S.W.2d 830, 834 (Tex. Crim. App. 1999). That is what happened in

this case. Petitioner was found guilty of only one offense, Aggravated Sexual Assault of a Child. (Doc. 14-28 at *148.)

It is clear in the Fifth Circuit that "counsel is not required to make futile motions or objections." *See Roberts v. Thaler*, 681 F.3d 597, 611 (5th Cir. 2012); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984). "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). As Petitioner's proposed challenge to the Indictment would have been meritless, Petitioner has failed to show counsel's performance was deficient. Moreover, Petitioner has failed to show counsel's failure to challenge the Indictment resulted in prejudice in light of the testimony and strong evidence against him that was presented at trial.

    2.    <u>Jury Verdict</u>

Next, in claim 2(c), Petitioner contends counsel was ineffective for failing to object to numerous errors within the court's charge to the jury during the guilt/innocence phase. Petitioner complains that counts two and six of the Indictment omitted the essential element of occurring during the same criminal episode. The alleged missing language, however, was present in both the Indictment and the instructions to the jury. Further, as explained above, the statute applicable to Petitioner's conviction defines the separate acts involved in this case as separate manners of committing a single criminal offense, and jury unanimity is generally not required on the alternate means of commission. *See Jefferson v. State*, 189 S.W.3d 305, 312-13 (Tex. Crim. App. 2006). Again, Petitioner's argument is without merit. Therefore, Petitioner has failed to show either deficient performance or prejudice.

    3.    <u>Denial of Counsel</u>

In his next ground, claim 2(d), Petitioner complains that counsel "so utterly failed to defend against the charges that the trial was the functional equivalent of a guilty plea." (Doc. 1 at 14.) Petitioner complains that counsel informed the court he could only render ineffective assistance and submitted a motion to withdraw. Petitioner complains that counsel failed to make any meaningful

attempts to consult with him while he was in jail. Additionally, Petitioner complains that following his release from jail, counsel would not meet with him outside of his work schedule. As a result, Petitioner claims he was forced to go to trial with counsel who was unprepared. Petitioner argues this is a case where *United States v. Cronic*, 466 U.S. 648 (1984), applies.

In *Cronic*, the Supreme Court recognized that a defendant might be constructively denied counsel even though an attorney had been appointed to represent him. A constructive denial of counsel occurs, however, in "only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied *any meaningful assistance at all.*" *Martin v. McCotter*, 796 F.2d 813, 820 (5th Cir. 1986) (quoting *Chadwick v. Green*, 740 F.2d 897, 901 (11th Cir. 1984)). In contrast to a *Strickland*[1] claim, "*Cronic* applies in those cases in which defense counsel 'entirely fails to subject the prosecution's case to a meaningful adversarial testing.'" *Haynes v. Cain*, 298 F.3d 375, 377 (5th Cir. 2002) (en banc) (quoting *Bell v. Cone*, 535 U.S. 685, 697 (2002)). "[A]n attorney's failure must be complete," and "the difference between the situations addressed by *Strickland* and *Cronic* is not of degree but of kind." *Id.* "When the defendant receives at least some meaningful assistance, he must prove prejudice in order to obtain relief for ineffective assistance of counsel." *Gochicoa v. Johnson*, 238 F.3d 278, 285 (5th Cir. 2000) (quoting *Goodwin v. Johnson*, 132 F.3d 162, 176 n.10 (5th Cir. 1997)). Petitioner bears the burden of proving a constructive denial of counsel. *See Childress v. Johnson*, 103 F.3d 1221, 1228-29 (5th Cir. 1997).

A review of the trial transcripts reveals that Petitioner was failing to communicate with his attorney and Petitioner left court proceedings without consulting with his lawyer and without advising the court of his intentions to leave. (Doc. 14-5 at *4-7.) Counsel then moved to withdraw as trial counsel and expressed a concern he would be ineffective based on Petitioner's refusal to communicate with him and failure to cooperate in securing witness testimony. (Doc. 14-6 at *72-73). The state

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984). A *Strickland* claim is appropriate when a criminal defendant received at least some meaningful assistance and requires the Petitioner to prove counsel's alleged deficient performance prejudiced the defense. *See infra* Section II.A.

opposed the motion, and the trial court denied the motion because it was based on Petitioner's own failure to cooperate and communicate with his attorney. *Id.*

Additionally, counsel negotiated with the state on Petitioner's behalf and informed Petitioner of the state's plea offer for 25 years' confinement with no possibility of parole which Petitioner rejected prior to trial. (Doc. 14-6 at *87-89). Counsel then proceeded to attempt to suppress a written statement, as well as a verbal recorded statement, as being the products of an illegal custodial interrogation by subjecting the admissibility of such evidence to a suppression hearing. (Doc. 14-7 at *5-33.) Counsel also vigorously contested the admissibility of other evidence against Petitioner. (Doc. #14-7 at *33-62.) Further, counsel subjected the prosecution's case to a meaningful adversarial testing during the trial in this case. Therefore, counsel provided "some meaningful assistance to petitioner" as required. *See Craker v. McCotter*, 805 F.2d 538, 542-43 (5th Cir. 1986). Petitioner's conclusory assertions otherwise are insufficient to state a claim for relief.

As set forth above, Petitioner has failed to show he constructively denied counsel, and counsel cannot reasonably be faulted for Petitioner's failure to cooperate and communicate with him. Therefore, Petitioner has failed to show his claims had merit or were substantial. Accordingly, Petitioner has failed to show the state court's determination was an unreasonable application of either *Strickland* or *Cronic* under § 2254(d).

B.  Conclusion

Petitioner has failed to show his underlying unexhausted claims of ineffective assistance of counsel have merit or are substantial, and he is not able to overcome the procedural bar of his unexhausted claims. Further, Petitioner has failed to show either deficient performance or prejudice related to his claims.

For the reasons set forth above, Petitioner has failed to show that the state court adjudication was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or that the state court adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding. Accordingly, Petitioner's grounds for review should be denied.

II.     *Ineffective Assistance of Counsel*

Petitioner contends counsel provided ineffective assistance of counsel by failing to request an accomplice-witness instruction to be included in the court's charge to the jury. Petitioner asserts that three other individuals were indicted for the same offense for which he was charged and each of the other individuals testified as to Petitioner's presence when the sexual assaults occurred. Further, Petitioner contends one of the witnesses, Brad Lewis, testified that Petitioner threatened to kill him if he testified at trial.

A.      Substantive Law

The Sixth Amendment of the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. A defendant's Sixth Amendment right to counsel attaches at all critical stages in the proceedings "after the initiation of formal charges." *Moran v. Burbine*, 475 U.S. 412, 431 (1986).

The Supreme Court has addressed the issue of what a Petitioner must prove to demonstrate an actual ineffective assistance of counsel claim. *Strickland v. Washington*, 466 U.S. 668 (1984). In order to show that counsel was ineffective a Petitioner must demonstrate the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted in a breakdown of the adversarial process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. To establish deficient performance, a Petitioner must show that counsel's actions "fell below an objective standard of reasonableness." *Id*. at 689. In evaluating counsel's performance, there is a "strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance," or that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.*

In order to prove the prejudice prong, "there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Coleman v. Vannoy*, 963 F.3d 429, 433 (5th Cir. 2020) (internal quotation omitted). Further, a "petitioner must affirmatively prove, not just allege, prejudice." *Id.* (internal quotation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Harrington,* 562 U.S. at 104. To satisfy the prejudice prong, the "likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

In order to prevail on an ineffective assistance of counsel claim, a Petitioner "must meet both the deficient performance and prejudice prongs of *Strickland*." *Wong v. Belmontes*, 558 U.S. 15, 16-17 (2009). If a Petitioner fails to prove the prejudice part of the test, the court need not address the question of counsel's performance. *See Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995). A reviewing court "must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir. 1992). In determining the merits of an alleged Sixth Amendment violation, a court "must be highly deferential" to counsel's conduct. *Strickland,* 466 U.S. at 687.

When a Petitioner brings an ineffective assistance claim under the AEDPA, the relevant question is whether the state court's application of the deferential *Strickland* standard was unreasonable. *See Beatty v. Stephens*, 759 F.3d 455, 463 (5th Cir. 2014). "Both the *Strickland* standard and AEDPA standard are 'highly deferential,' and 'when the two apply in tandem, review is doubly so.'" *Id.* (quoting *Harrington*, 562 U.S. at 105).

Strategic decisions made by counsel during the course of trial are entitled to substantial deference in the hindsight of federal habeas review. *See Strickland,* 466 U.S. at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight"). A federal habeas corpus court may

not find ineffective assistance of counsel merely because it disagrees with counsel's chosen trial strategy. *Crane v. Johnson,* 178 F.3d 309, 312 (5th Cir. 1999).

      B.      State Law

The accomplice-witness rule, Article 38.14 of the Texas Code of Criminal Procedure, prohibits a conviction based on the testimony of an accomplice, unless there is corroborating evidence connecting the defendant to the crime. TEX. CODE CRIM. PROC. Ann. art. 38.14. If the cumulative weight of all the corroborating evidence tends to connect the accused with the offense, then the evidence is sufficient. *Reed v. State*, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988). The corroborating evidence, whether circumstantial or direct, does not have to establish guilt beyond a reasonable doubt or directly link the accused to the offense by itself. *Id.* All facts and circumstances can be used for corroboration. *Mitchell v. State*, 650 S.W.2d 801, 8071 (Tex. Crim. App. 1983).

      C.      State Court Findings

The Texas Court of Criminal Appeals denied Petitioner's claims on the merits when it refused his Petition for Discretionary Review. The Ninth Court of Appeals, however, issued the last reasoned opinion on the matter. Accordingly, the decision of the Ninth Court of Appeals should be reviewed to determine whether the denial of this claim was contrary to, or an unreasonable application of, federal law. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). The appellate court made the following findings and conclusions:

> Lewis, Ross, and Porchia each admitted to having sex with R.S. Each one also testified to McGowen's presence at the scene when the sexual assaults occurred, but each one also testified he did not see McGowen engage in sexual relations with R.S. Lewis further testified that approximately one week prior to trial, McGowen threatened to kill him if he testified at trial.
>
> The accomplices' testimony provided no direct support for the allegation pleaded in the indictment that McGowen sexually assaulted R.S. But the accomplice-witness testimony did place McGowen at the scene of the sexual assaults and did have implications for the "acting in concert" pleading in the indictment and in the jury charge. Lewis testified that McGowen was one of the males who picked R.S. up and brought her to the place where she was subjected to what is commonly known as "gang rape." Ross indicated he saw McGowen stick a beer bottle in R.S.'s sexual organ. Porchia testified he saw McGowen standing around in the room and watching as R.S. was being sexually assaulted by various other males. Had the accomplice-witness instruction been given, the jury could not have considered this accomplice

13

> evidence unless corroborating, non- accomplice evidence tended to connect McGowen with the crime committed, including the "acting in concert" element of the offense.

*McGowen*, 2013 WL 6705800 at *4–5.

> The court found the non-accomplice evidence compelling and held that:
>
> There was non-accomplice evidence tending to connect McGowen to the offense. R.S. testified McGowen and Jared Cruse picked her up in a car and took her to a room known as the "baby room." She recognized some of the males there, including McGowen. One of the sexual assaults was recorded on videotape. The prosecutor questioned R.S. about its contents. In response to the prosecutor's question, R.S. agreed there were people "hollering in the background" while the sexual assault was taking place, and she indicated McGowen was one of those doing the "hollering." The voice heard on the videotape is urging the perpetrator on, while the sexual assault is being committed. R.S. testified the males present took turns with her.
>
> The males then took R.S. to a brown trailer (the "brown house"). R.S. testified that during the course of the various sexual assaults she had sex with McGowen, and she performed oral sex on him. He also stuck a beer bottle in her sexual organ. A videotape of that act was admitted into evidence and played for the jury.
>
> Other non-accomplice, corroborating evidence included McGowen's written, signed statement and his videotaped statement in which he confessed that R.S. performed oral sex on him. The jury also heard evidence that multiple males used condoms, and numerous condoms and condom wrappers were recovered from the scene. The testimony of the forensic scientist with the Texas Department of Public Safety supported a finding that DNA from McGowen and R.S. was present on one of the condoms found at the scene. Ashley Huynh, the forensic nurse examiner who examined R.S., testified that R.S. told her that once she was at her "home boy's house," McGowen and other males threatened R.S. with bodily harm if she did not "get naked[.]" She complied. R.S. also explained to Huynh that McGowen put the glass beer bottle in her sexual organ, and then took her in a room and sexually assaulted her with his sexual organ. The nurse's examination occurred on December 3, 2010, a few days after the November 2010 sexual assaults. Almost two years later, during the August 2012 trial, R.S. testified she did not remember whether she had sex with McGowen at the baby room that day, or whether she had vaginal sex with McGowen at the brown house.
>
> Whether the trial court's error in failing to submit an accomplice-witness instruction is harmful is "a function of the strength of the corroborating evidence." *Casanova,* 383 S.W.3d at 539. The strength of the non- accomplice evidence is a "function of (1) its reliability or believability and (2) how compellingly it tends to connect the accused to the charged offense." *Id.* As detailed herein, there was significant non-accomplice evidence that tended to connect McGowen to the aggravated sexual assault of R.S. and to his having acted in concert with others to commit the offense. The non-accomplice evidence was not so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive. We find the failure to give the accomplice-witness instruction was harmless, and we overrule issue one.

*Id.* at 5–7.

14

Additionally, in denying Petitioner's ineffective assistance of trial counsel claim, the state court found the following:

> In issue two, McGowen argues his trial counsel was ineffective for failing to request an accomplice-witness instruction. If counsel had done so, he would only have had to show "some harm" rather than egregious harm. McGowen contends that had trial counsel obtained the instruction, his counsel "could have argued that the accomplices' testimony should be discounted and dismissed by the jury, thus chipping away at the State's case."
>
> To establish ineffective assistance of counsel, McGowen must show by a preponderance of the evidence that his trial counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "'Reasonable probability' is a 'probability sufficient to undermine confidence in the outcome,' meaning 'counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009) (quoting *Strickland*, 466 U.S. at 687, 694). As the Court of Criminal Appeals has observed, "[I]t is difficult to envision that any competent attorney would reasonably forego an accomplice-witness jury instruction as a matter of strategy based on his theory of the case." *Zamora v. State*, No. PD-1395-12, 2013 WL 5729980, at *8 (Tex. Crim. App. Oct. 23, 2013). We assume, without deciding, that trial counsel's failure to request the accomplice-witness instruction was deficient performance. We turn to the second prong under Strickland.
>
> In this context, the analysis will turn on "whether there was a substantial amount of non-accomplice evidence and whether the record reveals any rational basis on which the jury could have doubted or disregarded that evidence." *Davis v. State*, 278 S.W.3d 346, 353 (Tex. Crim. App. 2009). As we have detailed herein, the record reflects there was a significant amount of non-accomplice evidence tending to connect McGowen to the offense. We cannot say that, in the absence of the testimony of Lewis, Ross, and Porchia, the non-accomplice evidence is so unconvincing as to render the State's overall case for conviction clearly and significantly less persuasive. The record reveals no rational basis on which the jury could have doubted or disregarded that evidence. Any failure to request an accomplice-witness instruction was harmless, and there is not a reasonable probability that, but for defense counsel's failure to request an instruction, the result of the trial would have been different. *See Smith v. State*, 392 S.W.3d 190, 197 (Tex. App. - San Antonio 2012, pet. ref'd). We overrule issue two.

*McGowen*, 2013 WL 6705800 at *8-9.

D.   Application

Based on the above findings, the state court concluded that Petitioner's trial counsel's representation was not unconstitutional, in that, the failure to request a witness-accomplice instruction was harmless.  As a result, Petitioner failed to show the alleged deficient performance of his trial counsel prejudiced his case.  Petitioner has failed to rebut the presumption of correctness afforded to

15

the state court's factual findings with clear and convincing evidence as required by statute. 28 U.S.C. §2254(e)(1).

Petitioner has failed to demonstrate he is entitled to relief with respect to the habeas court's determination that trial counsel's representation was constitutional. Petitioner has failed to show either the state court adjudication was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or that the state court adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, petitioner's ground for relief should be denied.

### E. Conclusion

The Texas Court of Criminal Appeals rejected Petitioner's claims on habeas review, denying relief. Even assuming, *arguendo*, Petitioner's unexhausted claims are not barred from review in this proceeding, the claims are without merit. Petitioner has failed to demonstrate he is entitled to relief with respect to the habeas court's determination that trial counsel's representation was constitutional. Petitioner has failed to show either the state court adjudication was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or that the state court adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, Petitioner's grounds for relief should be denied.

### Recommendation

The above-styled Petition for Writ of Habeas Corpus should be denied and dismissed.

### Objections

Within fourteen days after being served with a copy of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636 (b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**SIGNED this the 18th day of January, 2024.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE